Kevin HULTZ, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 76007.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 11, 2000.

Gwenda R. Robinson, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kristin M. Frazier, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES R. DOWD, Judge.

On July 19, 1996, a Lewis County jury found Kevin Hultz guilty of statutory rape in the first degree, statutory sodomy in the first degree, and child molestation in the first degree.[1] On September 5, 1996, Mr. Hultz was sentenced as a prior and persistent sexual offender to two terms of life imprisonment and one term of fifteen years, all terms to be served consecutively.

On July 9, 1997, Mr. Hultz filed a postconviction Rule 29.15 motion to vacate, set aside or correct the judgment and sentence. On September 16, 1998, the motion court held an evidentiary hearing. On March 4, 1999, the motion court denied Mr. Hultz's motion. This appeal follows.

*Facts*

In the light most favorable to the verdicts, the evidence adduced at trial showed the following. In December of 1995, the eight year-old victim, A.M., lived in Quincy, Illinois with her mother and her six year-old brother. Melissa Hultz began babysitting the two children in June of 1995. On December 29, 1995, Kevin Hultz, Melissa's brother, came to A.M.'s mother's apartment and asked if he could "borrow" A.M. to help clean the apartment from which Melissa was moving. Mr. Hultz convinced A.M. to come along by promising to pay her $20.00 for her help.

Mr. Hultz drove A.M. past Melissa's apartment without stopping. He told A.M. that Melissa was not there, then drove over the bridge into Missouri. He also told A.M. that they were going to his home in Maywood. When they arrived at the edge of Maywood, Mr. Hultz said the car was stalling and turned the car down a dirt road. He stopped it near the river. After working on the car, Mr. Hultz got back inside. He then pulled out a knife and held it against his own throat. He told A.M. that he had cancer, and that he was going to kill her, then himself.

Mr. Hultz made A.M. get into the back seat and remove all of her clothes except her shirt and socks. He followed her into the back, unzipping his pants and taking out his penis. He inserted his penis into her vagina. He also forced her to put her

---

1. In violation of Sections 566.032, 566.062 and 566.067 RSMo 1994, respectively. All further references are to RSMo1994 unless otherwise noted.

mouth on his penis and put her hands around it. After Mr. Hultz was finished, he drove A.M. to his bother's house. Mr. Hultz waited there until his sister-in-law left, then he forced A.M. into one of the bedrooms. Once again, he told her to remove all of her clothes except her shoes and shirt, then to lie on the bed. Mr. Hultz again had intercourse with her.

Mr. Hultz then drove A.M. home, stopping at a Coastal station to clean his car and to buy A.M. soda and a candy bar. Later that night, A.M.'s mother discovered what had happened and called the police. The police interviewed A.M. and had a doctor examine her. The examination revealed evidence of some level of penetration into the vagina. A.M. also directed the police to the Coastal station, Mr. Hultz's house, and the spot near the river where he had molested her. The details A.M. had given during the interview matched the location. The police also took photographs of the tire tracks, which matched the tires on Mr. Hultz's car. After a search of the area, A.M. directed the police to Mr. Hultz's brother's house. The police laboratory examined the bedding and discovered fibers that matched the pants A.M. was wearing on the day of the incident.

After trial, a jury found Mr. Hultz guilty of first degree statutory rape, first degree statutory sodomy, and first degree child molestation. The trial court sentenced him as a prior and persistent offender to two sentences of life imprisonment and one sentence of fifteen years, all to run consecutively. After a previous appeal to this Court, Mr. Hultz filed a motion for post-conviction relief. The motion court granted an evidentiary hearing, then denied the motion. Mr. Hultz appeals from this denial.

*Analysis*

## I. Voir Dire

■ Mr. Hultz contends that the motion court erred in denying his Rule 29.15 post-conviction motion because his trial council was ineffective for not questioning the jurors about his prior convictions during voir dire. Mr. Hultz had prior convictions for forcible rape, forcible sodomy, supplying liquor to a minor, and peace disturbance. These prior convictions were revealed to the jury when Mr. Hultz testified at trial. Mr. Hultz claims that because his attorney knew Mr. Hultz wanted to testify, she should have asked the prospective jurors during voir dire which of them would automatically find Mr. Hultz guilty because of these convictions.

Appellate review of the denial of a post-conviction claim for ineffective assistance of counsel is limited to deciding if the motion court clearly erred in finding that counsel was effective.[2] To prove ineffective assistance of counsel, Mr. Hultz must show that (1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) Mr. Hultz was prejudiced by his counsel's poor performance.[3]

■ Actions by counsel that constitute sound trial strategy are not grounds for ineffective assistance claims.[4] We will presume that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment.[5]

In this case, Mr. Hultz does not overcome the presumption that his counsel's action was sound trial strategy. During the post-conviction evidentiary hearing, when Mr. Hultz's trial counsel was asked about whether she usually questioned the jury during voir dire with respect to prior convictions, she replied, "I wouldn't say I

---

**2.** Rule 29.15(k); *State v. Hall,* 982 S.W.2d 675, 682 (Mo.banc 1998).

**3.** *Id.*

**4.** *Id.*

**5.** *Id.*

always do that. I always consider that. It's my feeling that in a lot of cases you simply call attention to it. It's like telling people not to think about the color blue." It is a reasonable trial strategy not to call attention to a defendant's prior convictions, especially when, as here, the convictions closely resemble the charges in the trial.

Furthermore, Mr. Hultz has not shown that he was actually prejudiced. To be entitled to a presumption of prejudice resulting from defense counsel's ineffective assistance during the jury selection process, a post-conviction movant must show that a biased venireperson ultimately served as a juror.[6] Mr. Hultz has not shown that a biased venireperson served as a juror. Point denied.

## II. Admission of Evidence

■■■ Mr. Hultz also claims that the motion court erred in denying his motion for post-conviction relief because the trial court allegedly admitted evidence of an uncharged crime and a bad act at trial. Mr. Hultz failed to raise this claim to the motion court. Consequently, as Mr. Hultz concedes, it is not preserved for appellate review.[7] "A point raised on appeal after a denial of a post-conviction motion can be considered only to the extent that the point was raised in the motion before the trial court. The point cannot be raised for the first time on appeal." [8]

We cannot review for plain error. This claim is raised for the first time on appeal and was not raised before the Rule 29.15 motion court. Consequently, it is not reviewable.[9] Point denied.

The motion court's denial of Mr. Hultz's Rule 29.15 motion is affirmed.

6. *State v. Pierce,* 927 S.W.2d 374, 377 (Mo. App. W.D.1996).

7. Rule 29.15; *State v. Johnson,* 968 S.W.2d 686, 696 (Mo.banc 1998).

GARY M. GAERTNER, P.J., concurs.

PAUL J. SIMON, J., concurs.

8. *State v. Evans,* 992 S.W.2d 275, 295–296 (Mo.App. S.D.1999).

9. *White v. State,* 939 S.W.2d 887, 904 (Mo. banc 1997).