Sean M. WILLIAMS, Respondent,

v.

STATE of Missouri, Appellant.

WD 79792

Missouri Court of Appeals,
Western District.

Opinion filed: July 25, 2017

Ellen H. Flottman, for Respondent.

Gregory L. Barnes, Jefferson City, for Appellant.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

EDWARD R. ARDINI, JR., JUDGE

The State appeals the Judgment of the Circuit Court of Randolph County granting Sean Williams's Rule 29.15[1] amended motion for post-conviction relief following an evidentiary hearing. The judgment is reversed.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

■ Williams was charged with first-degree assault, kidnapping, forcible sodomy, forcible rape, and armed criminal action. At his trial, nine witnesses testified, including the victim and one of her assailants. The evidence established that the victim was staying at a hotel with Michael Wright where she regularly got high on marijuana and methamphetamine with acquaintances. On February 21, 2012, Wright, the victim, Williams, and three others were in the hotel room. Everyone left the room except for Wright and the victim, who was high, so that Wright could "get [him] some booty." Williams returned

---

1. All references are to Missouri Supreme Court Rules (2017) unless otherwise noted.

2. A comprehensive summary is set forth because the court "must consider the totality of the evidence before the judge or jury ... [t]aking the unaffected findings as given, and taking due account of the effect of the errors on the remaining findings," in making a prejudice determination under the two-prong *Strickland* analysis for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 695-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Strong v. State*, 263 S.W.3d 636, 642 (Mo. banc 2008) ("Regarding a sentence to death, a defendant must show with reasonable probability that the jury, *balancing all of the circumstances*, would not have awarded the death penalty." (emphasis added) (citation omitted)).

with some syringes and used methamphetamine with Wright, and the victim ate a capsule of methamphetamine, smoked marijuana, and took prescription pain medications.[3]

Williams then left the hotel room again. Once Wright and the victim were alone, the victim began to organize items that she had brought from her father's home when Wright went "crazy" and accused the victim of stealing from him. He put a pillowcase over her head and said that he was going to kill her.[4] Wright called one of the other acquaintances, Tracy Stodgell, who could not understand him and gave the phone to Williams. Wright told Williams to come back to the hotel before he killed the victim. Williams told Stodgell that they were going back to the hotel to help Wright.

Once they arrived at the hotel, Stodgell remained in the car while Williams went inside. After entering the room, Williams pulled out a knife and put it to the victim's throat. Williams told the victim not to cause a scene, to do what they said, and to go out to the car. Wright was standing nearby and told Williams to make sure that the victim did not have a phone so that she would be unable to call anybody. Wright went out to the car, and Williams and the victim followed with the knife no longer at the victim's throat.

Wright drove with Stodgell in the passenger seat and Williams and the victim in the back seat. Stodgell immediately started yelling at the victim and asked why the victim stole from Wright since he was "the man that supplie[d] [her] addiction." The victim admitted that she had stolen from Stodgell as well, and Stodgell told the victim that she "should beat [her] ass for

that." Stodgell and the victim were both crying. The victim repeatedly apologized, but Wright was still angry and continued to yell at her. Williams again placed the knife to the victim's throat and told her to lean down. Wright told the victim that he was going to take her to "the basement," and Williams informed Wright that he would "quarterback this."

Wright drove them to a basement structure where a house was apparently going to be built. Wright called another acquaintance, Patrick Hallback, and told him to come meet them. After exiting the car, Wright hit the victim, causing her to fall to the ground. Williams stood the victim up and directed her to enter the basement structure. After Hallback arrived, Stodgell and Wright left.

Only Williams and the victim went inside the basement, where Williams tied the victim's hands behind her back with electrical cord. The victim testified that Williams forced her into a freezer and then closed the lid, placing cinder blocks on top. The victim could hear people talking and yelled for someone to let her out. She was allowed out of the freezer about a minute later when Williams opened the lid. The victim stood up and saw Hallback standing by the door frame.

Williams told the victim to get out of the freezer and that she would "get out of this alive" if she did what he said. Williams then made her have sexual intercourse with him with her hands still tied. The victim alleged that Williams next made her lie down on some plywood and perform oral sex on him, ejaculating onto the plywood. The victim asked Hallback to help her, but he did not. The victim testified

---

3. The victim admitted that using methamphetamine impairs the ability to focus, make decisions, and remember things. The victim also testified that she and Wright had not

slept for four days and admitted that lack of sleep may cause a person to be "delusional."

4. At some point, the victim was able to remove the pillowcase from her head.

that after Williams ejaculated, he made her get back inside the freezer and cinder blocks were again placed on top of it.

Meanwhile, Wright retrieved some items, including duct tape, from Hallback's home and then drove to make a drug deal before returning to the basement. Stodgell remained with him during this time, and Wright indicated to Stodgell that he just wanted to beat the victim and that Stodgell should do it because she was also a female.

After Wright and Stodgell returned, the freezer was opened and the victim observed Williams, Wright, and Stodgell present. Stodgell testified that the victim mentioned Stodgell's daughter's name because their kids were friends and that the victim appeared "scared to death" and "terrified." Stodgell punched the victim in the face two or three times and spit on her. They then closed the freezer, putting cinder blocks on top of the lid because none of the participants wanted to stay to watch over her. The victim eventually "passed out[.]" Williams, Wright, and Stodgell drove back to the hotel and decided that they would return to the basement the following day, let the victim out of the freezer, and "try to make things right with her[.]"

When the victim woke the following morning, she was able to untie her hands and remove a white glove and tape that had been placed over her mouth. She testified that she attempted to lift the lid but was unsuccessful until she found something that she was able to wedge under the lid. Once free, she ran down the road to a house where a married couple allowed her to use their phone. The victim called her father, who did not answer, so the husband of the couple then drove the victim to her father's home.

Stodgell attempted to wake Wright around 5:00 or 6:00 a.m., but he would not wake up until around 10:00 a.m. Once awake, Wright and Stodgell picked up Williams and went back to the basement. The cinder blocks were still on the freezer when they arrived, but the victim was no longer inside.

After attempting to retrieve her belongings, the victim talked to her cousins and was convinced to go to the police. A corporal from the sheriff's department responded to the Moberly Police Department and testified that he observed upon his arrival that the victim had a black eye, some scratch marks, and bruising on her body. The victim led officers to the location of the basement, where they observed two deep freezers along with numerous wood pallets, chairs, bed frames, cinder blocks, and other items, including a cigarette lighter, a cigarette, a piece of duct tape, electrical tape, and a white glove in one of the freezers. The victim did not initially tell the officers about the alleged sexual acts or mention the acts in her written statements to the police or to the nurse or doctor who treated her at the hospital. However, she eventually told an investigator about the alleged sexual assault.

Williams voluntarily went to the police department to be interviewed, and his recorded statement was played at trial. In the interview, he first denied being at the scene. After being told that his DNA was at the scene, he admitted that he had consensual sex with the victim at the hotel room, allegedly because she owed Wright money from a drug debt. He also admitted that he and Wright drove the victim to the basement but claimed she went voluntarily and that they did not restrain her. Williams stated that Wright and the victim yelled at each other on the drive to the basement and that, once they arrived, Wright slapped the victim, tied her up with a piece of cord, and put her in the freezer. Williams denied assisting Wright and recounted that he was picked up by Wright the following morning and went to the

basement but the victim was no longer there.

At the close of the evidence, Williams moved for judgment of acquittal, which was overruled by the trial court. The jury found Williams not guilty of armed criminal action but· guilty on all other counts. Williams's motion for new trial was overruled and he was sentenced to a total of ninety years' imprisonment. The convictions were affirmed on direct appeal.[5]

Following his appeal, Williams filed a timely *pro se* Rule 29.15 motion. Appointed counsel· filed an amended motion alleging that Williams's trial counsel was ineffective. The motion court[6] issued Findings of Fact, Conclusions of Law, and Judgment granting relief and ordering a new trial. The State appeals.

### Legal Background and Standard of Review

■ Ineffective assistance of counsel can be found only when· the defendant establishes· by a preponderance of· the evidence (1) "that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation" and (2) "that he was prejudiced by trial counsel's performance." *Williams v. State*, 490 S.W.3d 398, 403 (Mo. App. W.D. 2016) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *McLaughlin v. State*, 378 S.W.3d 328, 337 (Mo. banc 2012)). The two-prong *Strickland* analysis is well-established:

> First, [the defendant] must show that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation. *Strickland*[, 466 U.S. at 687, 104 S.Ct. 2052]. To satisfy the

performance ·prong of the *Strickland* test, [the defendant] must overcome a strong presumption that trial· counsel's conduct was reasonable and effective. *McLaughlin*, 378 S.W.3d at 337.

> To overcome this presumption, [the defendant] must point to "specific acts or omissions of counsel that, in light of all circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotation omitted). "A trial strategy decision may only serve as a basis for ineffective counsel if the decision is unreasonable." *Id.* Choosing one reasonable trial strategy over another· is not ineffective assistance. *Id.* "[S]trategic choices made· after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" *Id.* (internal quotation omitted).

> Second, [the defendant] must show that he was prejudiced by trial counsel's performance. *Id.* To satisfy the prejudice prong of the *Strickland* test, [the defendant] must demonstrate that, absent the claimed errors by trial counsel, there is a reasonable probability that the outcome of the trial would have been different. *Id.* "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation omitted).

> ·· If either the performance prong or the prejudice· prong is not met, then we need· not consider the other, and [the defendant]'s claim of ineffective assistance of counsel must fail. *Strickland*, 466 U.S. at 670, 104 S.Ct. 2052.

*Id.* at 403-04.

■. Our review "is limited to a determination of whether the findings and conclu-

---

**5.** *State v. Williams,* 439 S.W.3d 849 (Mo. App. W.D. 2014).

**6.** The Honorable Rachel L. Bringer Shepherd presided over the trial. Williams filed a mo-

tion to disqualify Judge Shepherd from presiding over the ineffective assistance of counsel proceedings. The motion was granted, and the Honorable Terry Tschannen was appointed to preside over the proceedings.

sions of the trial court are clearly erroneous." *Id.* at 403 (citing Rule 29.15(k)). "We presume the motion court's ruling is correct[,]" and "must be left with a 'definite and firm impression that a mistake has been made'" in order to overturn the motion court's decision. *Id.* (quoting *McLaughlin*, 378 S.W.3d at 336–37). However, the general rationale for deferring to the trial court—that the trial court would be able to observe the effect of any alleged deficient performance by trial counsel—does not hold in this case, which was transferred to a different judge for the Rule 29.15 proceedings. *See State v. Wells*, 804 S.W.2d 746, 749 (Mo. banc 1991) ("It is [ ] important that the same judge presided at the trial and the 29.15 hearing[ ] and was thus better equipped to assess the strengths and possible weaknesses of the prosecution's case[.]").

## Discussion

On appeal, the State argues that the motion court erred in concluding that Williams's trial counsel was ineffective for (1) conducting *voir dire* on Williams's prior convictions, (2) failing to review Williams's videotaped statement in his presence, (3) failing to seek redactions of the recorded statement, and (4) suggesting that Williams was guilty of felonious restraint but not kidnapping. (Points I, III, IV, and V). The State also argues that Williams's was not prejudiced by any alleged ineffective assistance in light of the overwhelming evidence of guilt. (Point II).

## I. Prior Convictions and Videotaped Statement

The State's allegations that the motion court erred in concluding that Williams's trial counsel was ineffective for addressing Williams's prior convictions during *voir dire*, failing to review Williams's videotaped statement in his presence, and failing to seek redactions of the recorded statement are factually intertwined and will be addressed in a consolidated manner.

The evidence at the Rule 29.15 hearing established that Williams and his trial counsel reviewed a report summarizing his statement to police prior to trial. Williams's trial counsel also filed a motion to suppress the videotaped statement. Williams's trial counsel consistently advised Williams that he should not testify because Williams's recorded statement would present his side of the story and, if he testified, he would be subjected to cross-examination over his prior convictions. Williams and his counsel also discussed that the prior convictions of the other witnesses, but not Williams, would be heard by the jury if Williams chose not to testify. Williams remained committed to his desire to testify despite his counsel's urging to the contrary.

Because of Williams's expressed intent to testify, trial counsel decided to inform the venire panel of Williams's prior criminal convictions to both inoculate the jury and also remove any potential jurors who would be biased. Williams's trial counsel could not recall whether he had specifically discussed with Williams the decision to inform the venire panel of his prior convictions, but Williams testified that they did not have such a conversation.

The trial court overruled Williams's motion to suppress the recorded statement on February 26, 2013, the day after *voir dire* and the day prior to opening statements. In a portion of the recording, Williams stated that he was "walking on eggshells" with Probation and Parole because he recently "dropped dirty," that he had prior convictions for both assault and robbery, and that he had served six and a half years in prison. Williams and his trial counsel discussed whether to move to redact these references from the recorded statement but decided against it because Williams's

prior criminal convictions had already been disclosed during *voir dire* and Williams intended to testify. Additionally, Williams's trial counsel was reluctant to seek to have the recorded statement edited based on a view that juries tended to believe that a defendant was attempting to hide something in such situations.

After the recording was played at trial, Williams decided not to take the stand in his own defense. Williams testified at the evidentiary hearing that he did not testify "because what I said in the statement was basically what I was going to say on the stand." Williams testified that he had specifically requested to view his recorded statement several times and that he would have decided against testifying prior to trial if he had been afforded that opportunity. Trial counsel did not recall Williams specifically requesting to review the recording but did recall that Williams asked him whether he had received the recorded statement.

The motion court concluded that Williams's trial counsel did not act as a reasonably competent attorney under the circumstances and that Williams was prejudiced, *i.e.*, there was a reasonable probability that the outcome of the trial would have been different, with respect to each of these ineffective assistance of counsel claims. In sum, the motion court concluded that Williams could not make an informed decision regarding whether to testify until he reviewed his recorded statement and that trial counsel was ineffective for failing to do so before trial. The court further reasoned that this "led to counsel's poor decision to unnecessarily inform the venire panel of [Williams]'s prior convictions." With respect to counsel not redacting the recorded statement, in part because Williams's prior convictions had already been revealed during *voir dire*, the trial court noted that "two wrongs do not make a right" and that the recorded statement

contained more details than what had been disclosed during *voir dire*.

■■■ The key issue before us is whether trial counsel was ineffective for failing to arrange for Williams to review his videotaped statement or provide him with a transcript of the statement prior to trial, as Williams argues that this failure impacted his decision on whether to testify, which then set in motion a series of actions by his trial counsel that Williams claims were prejudicial to his defense. While cognizant that we are to "presume the motion court's ruling is correct[,]" we are equally mindful that there is "a strong presumption that trial counsel's conduct was reasonable and effective" and "[s]trategic choices made after a thorough investigation of the law and the facts relevant to plausible options are virtually unchallengeable." *Williams*, 490 S.W.3d at 403 (citations omitted).

In the present case, trial counsel reviewed a summary of the interview prepared by police with Williams prior to receiving the actual recording from the State, and Williams pointed out several statements within the summary that he did not believe were accurate. Although a comparison of the summary to the recording reveals no inaccuracies, the summary did not include references to Williams's statements that he "just dropped dirty" and could not afford to be in situations like this because he was "already walking on eggshells." The summary also did not reference Williams's statements that he had past convictions for assault and robbery and had spent six and a half years in prison for those offenses.

■■ The testimony at the evidentiary hearing established that Williams's trial counsel consistently advised Williams, including after receiving and reviewing the recorded statement, that he should rely on his recorded statement and not testify in order to avoid placing his prior convictions

before the jury. Williams's choice to not immediately heed this advice required his counsel to implement a strategy that would minimize the prejudicial effect of Williams's prior convictions in the event he did testify. Accordingly, trial counsel made reasonable decisions to (1) reference Williams's prior convictions during *voir dire* to inoculate the jury to his criminal past and to remove for cause members of the venire panel who indicated that they would hold his prior conduct against him at trial and (2) not move to redact certain references contained in the recorded statement. *See, e.g., Woods v. State*, 771 S.W.2d 926, 927 (Mo. App. E.D. 1989) (Trial counsel's decision to conduct *voir dire* on prior convictions at a time when defendant expected to testify "did not fall below an objective standard of reasonableness at the time." (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052)). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions[,]" *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052, and "[s]trategic choices . . . are virtually unchallengeable." *See McLaughlin*, 378 S.W.3d at 337; *Williams*, 490 S.W.3d at 403.

Additionally, the strategy employed by trial counsel triggered no complaint from Williams at trial. During a colloquy with the trial court conducted after he had decided that he would not testify, Williams confirmed that he had been leaning toward testifying but that he had changed his mind after watching the recorded statement played at trial. His counsel explained to the trial court that he and Williams had discussed that the videotaped statement referenced that he had previously been in prison, was on probation, and had dropped dirty, which he would have moved to redact if Williams had not planned on testifying. However, because Williams had been consistent in his desire to testify and trial counsel had addressed his prior convictions during *voir dire*, he decided that playing the recorded statement in its entirety was preferable to having the recording edited and creating the impression that Williams was attempting to hide information from the jury. Williams agreed that *they had discussed this strategy*, that he felt he had been effectively represented by his trial counsel, *that trial counsel did everything that Williams had asked*, that trial counsel did not do anything over Williams's objection, and that he was satisfied with the services of his trial counsel.

The record reveals that it was not until after Williams was found guilty and sentenced that he began to complain that his trial counsel had ignored his requests to review the videotaped statement prior to trial and that this alleged failure had significantly impacted his decision-making. This complaint is directly contrary to his statements to the trial court during the above-referenced colloquy and is inconsistent with his actions prior to trial. As an example, notwithstanding his testimony at the evidentiary hearing of his repeated requests to view the videotaped statement and contrary to his present position, he curiously waived his right to appear at the suppression hearing regarding the recorded statement because he preferred to be returned to the department of corrections rather than remain at the local jail. Williams only appeared at the suppression hearing because his counsel insisted that he be brought to the courtroom after learning that Williams had not yet been transferred and was still being held in the nearby county jail. And despite being present at a hearing that was focused on the specific piece of evidence that he now claims he was demanding to view and was critical to his decision whether to testify, Williams did not seek to have the recording played at the suppression hearing and the record is silent to any other effort by him at that time to view the recorded statement.

We are hesitant to conclude that trial counsel's conduct was unreasonable where his actions were based on Williams's consistently expressed desire to testify (against counsel's advice) and where Williams's contemporaneous actions are inconsistent with his presently argued position. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Moreover, a conclusion under these facts that Williams's trial counsel was ineffective for employing a reasonable strategy based on a then-held position of his client (again, against the advice of counsel) would set an untenable precedent for obtaining a new trial. Under such a rule, a defendant could inform his counsel of his intent to testify, thereby prompting implementation of certain strategies by his counsel, only to thereafter reverse course and decide against testifying and—after being found guilty—complain for first time that his indecision on testifying was connected to some action or inaction of his counsel. While we do not mean to foreclose such an argument under all factual circumstances, under the facts presented here, with particular emphasis on Williams's representations during the aforementioned colloquy with the trial court together with his contemporaneous conduct, we do not find that Williams has satisfied the first prong of the *Strickland* test.

 Regardless, even if we were to defer to the motion court's conclusion that trial counsel's conduct, including the failure to review the videotaped statement with Williams prior to trial, was not reasonable, Williams must also prove by a preponderance of the evidence that he was prejudiced by these errors. *See id.* at 403 (citing *McLaughlin*, 378 S.W.3d at 337). In other words, there must be a reasonable probability that the outcome of the trial would have been different absent the er-

rors. *Id.* (citing *McLaughlin*, 378 S.W.3d at 337). The relevant question is whether there is a reasonable probability that the jury would have concluded that Williams did not commit the charged crimes if his trial counsel had not allowed reference to his prior bad acts to be placed before the jury. *See, e.g., Strickland*, 466 U.S. at 695, 104 S.Ct. 2052 ("[T]he question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant [conviction]."); *see also Strong*, 263 S.W.3d at 647 ("Demonstrating that the alleged error had some conceivable effect on the outcome of the trial is not sufficient. Rather, [the defendant] must show that, absent the alleged error, there is a reasonable probability that he would have been found not guilty." (citations omitted)). In making this determination, the court "must consider the totality of the evidence before the judge or jury ... Taking the unaffected findings as given, and taking due account of the effect of the errors on the remaining findings[.]" *Strickland*, 466 U.S. at 695-96, 104 S.Ct. 2052; *see also Strong*, 263 S.W.3d at 642, 647 (balancing all of the circumstances to determine whether, "absent the alleged error, there is a reasonable probability that he would have been found not guilty").

We are again mindful that we are to presume that the motion court's ruling is correct. *Williams*, 490 S.W.3d at 403 (citation omitted). However, as previously noted, the motion court did not preside over the trial. And, although the motion court purported to apply *Strickland*, the judgment includes only conclusory statements that Williams was prejudiced. Notably, the judgment does not explain, considering the totality of the evidence, how the jury would have concluded that Williams did

not commit the charged crimes absent the references to his prior bad acts.[7] *See Strickland*, 466 U.S. at 695-96, 104 S.Ct. 2052; *see also Strong*, 263 S.W.3d at 642, 647.

Williams's claim of prejudice fails for multiple reasons. First, inoculating the jury to prior bad acts or previous convictions of a defendant is a common trial strategy. *See, e.g., Tyler v. Wyrick*, 635 F.2d 752, 754 (8th Cir. 1980) (In appeal of denial of petition for writ of habeas corpus (following the denial of post-conviction relief by the Missouri Court of Appeals), the Eighth Circuit found that the defendant's "trial counsel did not fail to exercise the customary skill and diligence that a reasonably competent attorney would exercise" when he informed the jury about prior convictions of the defendant during *voir dire*.); *State v. LaFromboise*, 246 N.W.2d 616, 620 (N.D. 1976) ("In many cases, it is effective trial strategy to precondition jurors to any potentially negative aspects of a defendant's case at the earliest and least prejudicial time of a trial— and during the [*voir dire*] examination of the jury is an ideal time to do so because it permits a party to remove jurors who are found to be prejudiced by such information[.]").[8] Missouri courts have held that a defendant is not prejudiced by trial counsel's *voir dire* on prior convictions or by the admission of evidence of prior convictions, particularly where the defendant did not show that any biased venireperson served as a juror, where the inquiry was conducted at a time when the defendant was expected to testify, or where the sufficiency of the evidence was not questioned. *See, e.g., Hultz v. State*, 24 S.W.3d 723, 726 (Mo. App. E.D. 2000) ("To be entitled to a presumption of prejudice resulting from defense counsel's ineffective assistance during the jury selection process, a post-conviction movant must show that a biased venireperson ultimately served as a juror." (citation omitted)); *Woods*, 771 S.W.2d at 927 (Trial counsel not ineffective for conducting *voir dire* on priors where defendant expected to testify at time and defendant not prejudiced because each member of jury expressed ability to set aside any consideration of prior convictions.); *Starr v. State*, 735 S.W.2d 134, 136 (Mo. App. E.D. 1987) (Defendant not denied effective assistance of counsel due to failure to object to admission of evidence of defendant's prior convictions where defendant requested and expected to testify at time evidence was admitted, sufficiency of evidence of guilt was not questioned, and defendant tried as prior offender.); *see also Strong*, 263 S.W.3d at 648 (A defendant "is entitled to a presumption of prejudice resulting from counsel's ineffective assistance during the jury selection process only if the [defendant] can show that a biased venireperson ultimately served on the jury[.]" (citation omitted)). Here, Williams has not shown that any biased members of the venire panel served on the jury, and a review of the record confirms that five of the six venire members who

7. The motion court simply asserts for each claim, without analysis or elaboration, that, had trial counsel acted in a different manner, a reasonable probability exists that "the outcome of Movant's trial would have been different."

8. *See also Christian v. State*, 455 S.W.3d 523, 526 (Mo. App. W.D. 2015) (assuming that "the 'performance' prong of the *Strickland* analysis" was satisfied where "the trial court found that the performance of [the defen- dant]'s trial counsel was deficient[ ] because counsel failed to examine venirepersons concerning [the defendant]'s prior convictions" and the State did not challenge the finding on appeal); *Brown v. State*, 373 Md. 234, 817 A.2d 241, 243 (Md. 2003) ("The prevailing attitude amongst both practitioners and scholars of trial advocacy is that preemptive disclosure is a common and effective tactic for dealing with the threat of impeachment by prior conviction.").

responded that they would allow the prior convictions to affect their decision were stricken for cause. The remaining individual, who admitted that she would consider the convictions in judging his credibility, served only as an alternate.

■ In addition, Williams has not established that the alleged errors affected the totality of the evidence such that there is a reasonable probability that the jury verdict would have been different. *See Strickland*, 466 U.S. at 695-96, 104 S.Ct. 2052 (considering whether there is a reasonable probability that the jury verdict would have been different considering the totality of the evidence as affected by the alleged errors); *see Strong*, 263 S.W.3d at 642, 647 (balancing all of the circumstances to determine whether, "absent the alleged error, there is a reasonable probability that he would have been found not guilty"). A review of the trial record reveals the strength of the State's case against Williams. The victim testified that Williams held a knife to her throat in the hotel room and told her to go out to the car, put the knife back to her throat and told her to lean down in the car, tied her hands behind her back and ordered her to get inside the freezer, told her that she would get out of the situation alive if she did what he said, forced her to have sexual intercourse, put a glove in her mouth and wrapped tape around her head, and then put her back in the freezer. The victim further testified that the freezer was later opened and Williams, Stodgell, and Wright were standing outside. After Stodgell hit the victim, the freezer was closed again and the victim could hear objects being placed on top. The victim eventually "passed out[.]" The next morning, she was able to get her hands untied and escape from the freezer by wedging an object under the lid. The victim then ran until she found a home, where she rang the doorbell and asked to use the phone. The victim's testimony was corroborated by (1) Stodgell, who testified that she was in the car when the victim was taken to the basement by Wright and Williams, that she left with Wright, and that, upon their return, she hit the victim and helped place cinder blocks on the freezer; (2) the husband of the couple whose home the victim ran to after escaping from the freezer; and (3) the wife of Hallback, who testified that Wright was at their house that night, took some duct tape, and would not tell her why he was driving her husband's car.

Moreover, Williams's recorded statement setting forth his account of the events was riddled with inconsistencies, including the fact that Williams lied to the police by denying that he had any involvement before setting forth his version of the events. Williams also maintained that Stodgell was not at the scene that night, an inconceivable assertion given that Stodgell testified at trial to her involvement and pleaded guilty for her actions.[9]

In conclusion, in light of the fact that no biased member of the venire panel served on the jury and based on a review of the totality of the evidence presented at trial, we do not find that there is a reasonable probability that the outcome of the trial would have been different absent the alleged errors. *See Strickland*, 466 U.S. at 695-96, 104 S.Ct. 2052; *Strong*, 263 S.W.3d at 642, 647; *Williams*, 490 S.W.3d at 403.

## II. Request to Find Guilty of Felonious Restraint

■ The State also alleges that the motion court erred in concluding that

---

9. Williams also argues that his reference to having "dropped dirty" and that he was "already walking on eggshells" was prejudicial. It is relevant to note that he made those statements for the beneficial purpose of explaining that he had no motive to commit the crimes and it is equally plausible that the jury interpreted those comments in that context.

Williams's trial counsel was ineffective for informing the jury during opening statement that Williams was not guilty of kidnapping and that he would ask them to instead find him guilty of felonious restraint at the conclusion of the trial.

At the evidentiary hearing, Williams's trial counsel testified that he had believed felonious restraint was a lesser-included offense of kidnapping at the time he gave his opening statement and at the instruction conference when he attempted to have a felonious restraint instruction submitted to the jury. Although he testified that he believed that the courts had incorrectly applied the law on lesser-included offenses, he also conceded that he was unaware that felonious restraint was not a lesser-included offense of kidnapping.

The motion court concluded that Williams's trial counsel failed to act as a reasonably competent attorney under the circumstances and that Williams was prejudiced, *i.e.*, there was a reasonable probability that the outcome of the trial would have been different, when he informed the jury in his opening statement that he would later ask that Williams be found guilty of felonious restraint when it was not a lesser-included offense of kidnapping. The motion court continued that "[s]uch a concession caused the jury to be more likely to convict [Williams] of kidnapping when a felonious restraint instruction was not given."

■ Again, we may only review "whether the findings and conclusions of the trial court are clearly erroneous." *Williams*, 490 S.W.3d at 403 (citing Rule 29.15(k)). In evaluating the first prong of an ineffective assistance of counsel claim, *i.e.*, Williams's trial counsel's performance,

there is "a strong presumption that trial counsel's conduct was reasonable and effective." *Id.* (citing *McLaughlin*, 378 S.W.3d at 337). Throughout the trial, Williams's trial counsel attempted to convince the jury that the crime committed by Williams was not kidnapping. He argued that an element of kidnapping was lacking in the case against Williams because Wright, not Williams, removed the victim for the purpose of inflicting physical injury or terrorizing the victim and also emphasized during his cross-examination of Stodgell that she had pleaded guilty only to felonious restraint.[10] Although this strategy might seem reasonable, trial counsel's testimony at the evidentiary hearing reveals that he failed to thoroughly investigate the law concerning felonious restraint and kidnapping. *See id.* ("[S]trategic choices made after a thorough investigation of the law ... are virtually unchallengeable." (citing *McLaughlin*, 378 S.W.3d at 337)). "[F]elonious restraint is not a lesser included offense of kidnapping because it requires proof of an element, exposure to a substantial risk of harm, which is not included in the kidnapping statute." *State v. Harper*, 855 S.W.2d 474, 481 (Mo. App. W.D. 1993) (citing *State v. Sipe*, 648 S.W.2d 177, 181 (Mo. App. W.D. 1983)). Accordingly, we do not find that the motion court's conclusion that trial counsel was unreasonable for employing a strategy based on a theory that felonious restraint was a lesser-included offense of kidnapping was clearly erroneous. *See Williams*, 490 S.W.3d at 403 (citing Rule 29.15(k)).

■ However, we must again examine whether Williams proved by a preponderance of the evidence that he was preju-

---

10. "A person commits the crime of kidnapping if he or she unlawfully removes another without his or her consent from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of.... [i]nflicting physical injury on or terrorizing the victim or another." § 565.110.1(5), RSMo Supp. 2004.

diced by trial counsel's conduct. *See id.* (citing *McLaughlin*, 378 S.W.3d at 337). The question to be considered is whether there is a reasonable probability that the jury would have concluded that Williams was not guilty of kidnapping absent trial counsel's announcement during opening statement that he would be asking them to find Williams guilty of felonious restraint at the conclusion of the trial. *See, e.g., Strickland*, 466 U.S. at 695, 104 S.Ct. 2052 ("[T]he question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant [conviction]."); *Strong*, 263 S.W.3d at 647 ("[The defendant] must show that, absent the alleged error, there is a reasonable probability that he would have been found not guilty." (citations omitted)).

The motion court concluded that Williams was prejudiced by his trial counsel's concession of guilt on an offense that was not ultimately submitted to the jury. However, the motion court again engaged in no analysis to support this conclusion and "[d]emonstrating that the alleged error had some conceivable effect on the outcome of the trial is not sufficient. Rather, [the defendant] must show that, absent the alleged error, there is a reasonable probability that he would have been found not guilty." *Strong*, 263 S.W.3d at 647 (citations omitted).

Williams has not shown that there is a reasonable probability that he would have been found not guilty of kidnapping. First, despite counsel's efforts throughout the trial to convince the jury that Williams did not kidnap the victim, the jury found Williams guilty of kidnapping, and we are to presume that the jury followed the instructions in reaching its verdict. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 ("In

making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law."); *State v. McFadden*, 369 S.W.3d 727, 752 (Mo. banc 2012) ("The jury is presumed to follow the trial court's instructions." (citation omitted)); *State v. Grier*, 171 Wash.2d 17, 246 P.3d 1260, 1274 (Wash. 2011) (holding that the court must assume "that the jury would not have convicted [the defendant] . . . unless the State had met its burden of proof"); *Sanders v. State*, 946 So.2d 953, 956-958 (Fla. 2006) ("[U]nder *Strickland*, a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon. . . . When a jury convicts a defendant of a criminal offense, it has decided that the evidence demonstrated beyond a reasonable doubt that the defendant committed the crime charged."). *But see Crace v. Herzog*, 798 F.3d 840, 843 (9th Cir. 2015) (declining to follow *Grier* and holding that defendant was prejudiced by counsel's failure to request a lesser-included instruction). Additionally, considering the totality of the evidence, there is not a reasonable probability that the jury verdict would have been different absent the error. *See Strickland*, 466 U.S. at 695-96, 104 S.Ct. 2052; *Strong*, 263 S.W.3d at 642, 647; *Williams*, 490 S.W.3d at 403. The facts set forth throughout this opinion strongly support that Williams removed the victim from the hotel room for the purpose of inflicting physical injury or terrorizing her. In light of the presumption that the jury is presumed to follow the court's instructions and the totality of the evidence, there is not a reasonable probability that the jury would not have convicted Williams of kidnapping absent his counsel's comments regarding the offense of felonious restraint. *See Strickland*, 466 U.S. at 695-96, 104 S.Ct. 2052; *Strong*, 263 S.W.3d at 642, 647; *Williams*, 490 S.W.3d at 403.

## CONCLUSION

The judgment of the motion court is reversed.

All concur.