

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| LEMUEL G. WILLIAMS, | ) |
| | ) |
| Appellant, | ) |
| | ) WD78412 |
| v. | ) |
| | ) OPINION FILED: |
| | ) May 31, 2016 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Shane T. Alexander, Judge**

**Before Division IV:** Alok Ahuja, Chief Judge, Presiding, and
James Edward Welsh and Mark D. Pfeiffer, Judges

Mr. Lemuel G. Williams ("Williams") appeals from the Judgment of the Circuit Court of Clay County, Missouri ("motion court"), denying his Rule 29.15 amended motion for post-conviction relief, based on ineffective assistance of trial counsel, after an evidentiary hearing. We affirm.

### Factual and Procedural History[1]

Late in the afternoon on November 16, 2009, a gold Pontiac Grand Prix pulled into the parking lot of a strip mall on North Oak in Gladstone. The car parked in front of an iTalk store.

---

[1] On appeal from the motion court's ruling on a Rule 29.15 motion, we view the facts in the light most favorable to the jury's verdict. *Rollins v. State*, 454 S.W.3d 380, 382 n.2 (Mo. App. W.D. 2015). Portions of the facts are quoted from Mr. Williams's direct appeal, *State v. Williams*, 409 S.W.3d 460, 463-65 (Mo. App. W.D. 2013), without further attribution.

The iTalk store's video surveillance camera showed that, from 4:24 until 4:30 p.m., when the iTalk store closed, no one got out of the gold Pontiac.

The iTalk store was located next to a PDQ Title Loans store. Ms. Savannah Waller-Hudson was working at PDQ Title Loans that day. Sometime around 4:40 p.m., she was talking on the phone to her supervisor, Ms. Lisa Boone, about the day's business when she saw a man walking quickly toward her. The man was African-American and was wearing a black, pinstriped, button-up dress shirt with a black long-sleeved shirt underneath and black jeans. He was also wearing gold removable teeth and a black stocking cap. As he moved toward her, he pulled the stocking cap over his face.

The man demanded that Ms. Waller-Hudson get off the phone. Before hanging up, Ms. Waller-Hudson yelled at Ms. Boone to call 911. The man proceeded to rob PDQ Title Loans, displaying his gun to Ms. Waller-Hudson to compel her cooperation with the cash heist.

Meanwhile, after Ms. Waller-Hudson hung up on her, Ms. Boone called Mr. Victor Caruso, the owner of PDQ Title Loans. Mr. Caruso called 911 and pulled up the live feed of his store webcam on his computer in time to see the man grab Ms. Waller-Hudson's shoulder and lead her behind the cash register. Mr. Caruso watched the webcam live feed as the man left the store. From the time Mr. Caruso first saw the man robbing the store until he saw the police, approximately ten minutes elapsed. Approximately five minutes elapsed between the time he saw the man exit the store and he saw the police arrive at 5:00 p.m.

The police were dispatched to the robbery at 4:56 p.m. The dispatch described the suspect as an African-American male, wearing a black shirt with pinstripes and possibly a black jacket and black hat. The dispatch also stated that the suspect had fled southbound on foot. One of the police officers who responded was Captain Stanley Dobbins ("Officer Dobbins"). On his way to the PDQ Title Loans store at approximately 5:00 p.m., Officer Dobbins saw a gold

2

Pontiac Grand Prix traveling southbound on North Oak, about four to seven blocks away from PDQ Title Loans. Officer Dobbins saw two African-American men in the car. He noticed that the passenger was "scrunched down" in the seat, so he was unable to get a good look at the passenger at that time. Because Officer Dobbins knew that a similar car was part of an investigation of another robbery at the same PDQ Title Loans store about a month earlier, he began to follow the car. Eventually, Officer Dobbins pulled his car alongside the gold Pontiac Grand Prix and saw that the passenger fit the description of the suspect in the current robbery. Officer Dobbins reported this to dispatch and waited for other officers to arrive before executing a traffic stop.

Upon stopping the car, the police learned that Williams was the driver and that Andre Williams ("Andre"),[2] who matched the description of the robbery suspect, was the passenger. Initially, Andre gave the police several false names. Williams told Officer Dobbins that he and Andre were just out driving around. Both Williams and Andre were arrested. Ms. Waller-Hudson was brought to the scene and identified Andre as the person who robbed the PDQ Title Loans store. As the police were booking Andre, he tried to hide a set of gold teeth in his hand.

When questioned by the police the day after the robbery, Williams said that he was from Jackson County, but his girlfriend lived in the Gladstone area, and he stayed with her from time to time. He said that Andre was his cousin from Oklahoma, whom he had known for five years. Williams said that Andre had been in Kansas City for two months, and he was helping Andre get around town by driving him places. Williams told the police that he had recently taken Andre to buy a set of gold teeth.

---

[2] Because Lemuel Williams and Andre Williams have the same surname, we refer to Andre Williams by his first name for clarity. No familiarity or disrespect is intended.

Williams told the police that, on the day of the robbery, he arrived in Gladstone around 3:30 p.m. and picked up Andre. According to Williams, he and Andre drove to a CVS on Shady Lane and North Oak. After initially indicating it was a CVS, however, Williams then remembered that it might have been a Walgreens. Williams said that Andre waited in the car as he went inside the pharmacy for thirty minutes and bought lotion. After leaving the pharmacy, Williams drove on North Oak and pulled into the parking lot of a sub shop and CD store located on North Oak. Williams told the police that he had been to another CD store located on Antioch, but on the day of the robbery, he went only to the CD store on North Oak. Williams said that he went into the sub shop, bought a cookie and a drink, and then went into the CD store. According to Williams, the clerk at the CD store had fluffy hair. Williams told the police that he was in the CD store for thirty minutes, while Andre stayed in the car. When he came out of the CD store, Andre was still in the car. Williams said that they left the parking lot and were pulled over shortly thereafter.

Williams denied any knowledge of the robbery and told the police that Andre must have taken his car while he was in the pharmacy or the CD store. Williams was confident that he could take the police to the stores he had been to that afternoon, so a detective drove him to North Oak to find the stores. They found a CD store on North Oak, but Williams did not remember that store.

Later that day, the detective took Williams out again, but this time they drove on Antioch instead of North Oak. They found a CD Warehouse and a Mr. Goodcents on Antioch, and Williams then remembered those stores as the ones he had been in on the day of the robbery. When the detective showed the clerk at CD Warehouse a picture of Williams, however, the clerk said that he did not notice that Williams was in the store on the day of the robbery. The clerk did not have fluffy hair, and he said that no one who worked there had fluffy hair. And, upon

4

searching the gold Pontiac Grand Prix, the police did not find the lotion that Williams claimed to have bought or the trash from Mr. Goodcents, which Williams said he put in a plastic bag in the car. Finally, the police timed the driving distance between the CD Warehouse and PDQ Title Loans and confirmed that Williams's purported timeline of events (and the location of the gold Pontiac) simply did not match up with the PDQ Title Loans webcam, nor the time stamp of the police dispatch from the 911 call from Mr. Caruso when the robbery was taking place.

The State charged Williams with first-degree robbery for acting in concert with Andre to forcibly steal money from PDQ Title Loans. The first jury trial of the case ended in a mistrial due to juror misconduct. During the second trial, Williams testified in his defense. Williams testified that he was not the getaway driver in the robbery. He said that, on the day of the robbery, he picked up Andre in his girlfriend's gold Pontiac Grand Prix between 3:30 and 4:00 p.m. to run some errands. Williams testified that they first went to Walgreens to buy lotion. He was in the store for thirty minutes, while Andre waited in the car. In this version of Williams's recollection of events, Williams did not remember whether he purchased any lotion. Williams said that, after leaving Walgreens, he drove to a strip mall on Antioch. According to Williams, he went to a Mr. Goodcents store and bought two cookies and a drink. He then testified that he must have returned to the car and moved the car in front of the CD Warehouse store that was in the same strip mall. Williams testified that he went into CD Warehouse for thirty minutes, leaving Andre in the car with the car keys. Williams said that, when he came out of the store, Andre was not in the car as he had originally remembered; but, instead, Andre was sitting on the hood of the car, smoking a cigarette. Williams testified that they drove around to look for another CD store, but when he could not find another CD store, he decided to return to CD Warehouse. According to Williams, he was on his way back to CD Warehouse when the police pulled him over.

5

The jury did not believe Williams's moving-target memory of events and found him guilty of first-degree robbery. In accordance with the jury's recommendation, the court sentenced him to ten years in prison. Williams's conviction was affirmed on direct appeal. *State v. Williams*, 409 S.W.3d 460 (Mo. App. W.D. 2013).

Williams filed a timely *pro se* Rule 29.15 motion for post-conviction relief, and appointed counsel filed a timely amended motion. The motion court conducted an evidentiary hearing at which Andre, Williams, and Williams's trial counsel testified. Thereafter, the motion court issued its judgment denying the amended motion.

Williams timely appealed.

## Standard of Review

Appellate review of the motion court's ruling denying a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(k). We presume the motion court's ruling is correct. *McLaughlin v. State*, 378 S.W.3d 328, 336-37 (Mo. banc 2012). To overturn the motion court's decision, the appellate court must be left with a "definite and firm impression that a mistake has been made." *Id.* at 337 (internal quotation omitted).

To be entitled to post-conviction relief for ineffective assistance of counsel, Williams must satisfy the two-prong *Strickland* test by a preponderance of the evidence. *Id.*

First, Williams must show that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the performance prong of the *Strickland* test, Williams must overcome a strong presumption that trial counsel's conduct was reasonable and effective. *McLaughlin*, 378 S.W.3d at 337. To overcome this presumption, Williams must point to "specific acts or omissions of counsel that, in

6

light of all circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotation omitted). "A trial strategy decision may only serve as a basis for ineffective counsel if the decision is unreasonable." *Id.* Choosing one reasonable trial strategy over another is not ineffective assistance. *Id.* "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" *Id.* (internal quotation omitted).

Second, Williams must show that he was prejudiced by trial counsel's performance. *Id.* To satisfy the prejudice prong of the *Strickland* test, Williams must demonstrate that, absent the claimed errors by trial counsel, there is a reasonable probability that the outcome of the trial would have been different. *Id.* "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation omitted).

If either the performance prong or the prejudice prong is not met, then we need not consider the other, and Williams's claim of ineffective assistance of counsel must fail. *Strickland*, 466 U.S. at 670.

**Analysis**

**Point I – Failure to Investigate and Call a Witness**

In Williams's first point relied on, he challenges the motion court's denial of his claim that trial counsel was ineffective for failing to investigate and call Andre as a witness at Williams's second trial. Williams contends that but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. Since these issues are interrelated, we discuss them together.

In every criminal case:

counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for

7

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 691. "Investigation need only be adequate under the circumstances." *Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987). "When counsel knows generally the facts that support a potential defense, 'the need for further investigation may be considerably diminished or eliminated altogether.'" *Id.* (quoting *Strickland*, 466 U.S. at 691).

To prevail on a claim of ineffective assistance of trial counsel for failure to call a witness, Williams must show that: (1) trial counsel knew or should have known about Andre's existence; (2) Andre could have been located through a reasonable investigation; (3) Andre would have testified at trial; and (4) Andre's testimony would have provided Williams with a viable defense. *McIntosh v. State*, 413 S.W.3d 320, 328 (Mo. banc 2013). Even if Williams establishes these elements, trial counsel's decision not to call Andre as a witness is presumptively a matter of trial strategy and ordinarily will not support a claim of ineffective assistance of counsel, unless Williams clearly establishes otherwise. *Barton v. State*, 432 S.W.3d 741, 757 (Mo. banc 2014); *Henderson v. State*, 398 S.W.3d 575, 578 (Mo. App. W.D. 2013).

At the evidentiary hearing, trial counsel testified that he interviewed Andre before Williams's first trial and determined that Andre had no information beneficial to Williams. Andre told trial counsel that he was high on PCP on the day of the robbery, that the events of the day were "very, very fuzzy" in his mind, and that he was not convinced that he was guilty and was considering withdrawing his plea. Specifically, in reference to his interview of Andre, trial counsel stated:

> [H]e appeared upset with his decision that he had pleaded guilty. He was not convinced that he was guilty—I'm talking about Andre. He was not convinced that he was guilty.
>
> He said on the day in question he was high on some type of drugs. . . .

8

Anyway, the events of the day were very, very fuzzy in the mind of Andre Williams, and he was not convinced at all that he was guilty. . . .

So he was, on the day I met Andre Williams, he was talking all about how he was going to go back to Court and withdraw his guilty plea, and he did not remember that he even did the robbery, and was displeased with the outcome of his case. So he basically didn't agree with all the things I was hoping he was going to say so that we could use him as a defense witness.

Trial counsel decided not to follow up this initial interview with a second interview because Andre simply "was not saying the right things," and nothing had changed between the first and second trial to make him believe that Andre would have been a beneficial witness to call on Williams's behalf.

At the evidentiary hearing, Andre testified that Williams was in a CD store while he committed the robbery and that Williams was not involved in the robbery, did not plan the robbery, did not receive any of the money from the robbery, and did not try to help him cover up the robbery. Andre testified that when trial counsel contacted him, he told trial counsel that he would provide a favorable statement but, coincidentally, not until *after* his guilty plea. Thereafter, on cross-examination, Andre also testified that after he pleaded guilty, he talked to a probation officer, who was completing the Sentence Assessment Report related to Andre, and told her that he was "very high on PCP" on the day of the robbery, and he didn't think the robbery was planned because he and Williams "were high and needed the money."

Needless to say, we find it no coincidence that the motion court found Andre's testimony to be suspect. Nor do we find it any coincidence that the motion court concluded that there was "no credible evidence[3] that Andre[,] even if he would have testified at [Williams's] second jury trial[,] would have provided anything approaching a viable defense for [Williams]." Nor do we

---

[3] "Determinations concerning credibility are exclusively for the motion court. The motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed, and we defer to the credibility determinations of the motion court." *Rios v. State*, 368 S.W.3d 301, 317 (Mo. App. W.D. 2012) (internal quotation omitted).

find it any coincidence that the motion court concluded that it was not unreasonable trial strategy to choose not to call a witness who had admitted to his probation officer that he did not remember the robbery because he was "very high on PCP" and did not believe he and Williams had planned the robbery because he and Williams "were high and needed money for PCP." The motion court's depiction of Andre's testimony is both supported by the record and common sense. We certainly are not left with a "definite and firm impression that a mistake has been made." *McLaughlin*, 378 S.W.3d at 337 (internal quotation omitted).

In short, the motion court's conclusions that Williams failed to satisfy either the performance prong or the prejudice prong of the *Strickland* test was not clearly erroneous.

Point I is denied.

### Point II – Failure to Object to Instruction

In Williams's second point, he asserts that the motion court clearly erred in overruling his Rule 29.15 motion for post-conviction relief because trial counsel failed to object to Instruction No. 6, the verdict director for first-degree robbery, on the grounds that it did not conform to MAI-CR3d 304.04. Jury Instruction No. 6 provided:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 16, 2009, in the County of Clay, State of Missouri, Andre Williams took money, which was property in the possession of PDQ Title Loans, and

Second, that Andre Williams did so for the purpose of withholding it from the owner permanently, and

Third, that Andre Williams in doing so threatened the immediate use of physical force on or against Savannah Waller-Hudson for the purpose of preventing resistance to the taking of the property, and

Fourth, that in the course of taking the property, Andre Williams displayed or threatened the use of what appeared to be a deadly weapon,

10

then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant *acted together with or aided* Andre Williams in committing that offense, then you will find the defendant guilty under Count 1 of robbery in the first degree. . . .

(Emphasis added.) Specifically, Williams argues that the instruction incorrectly used the language "acted together with or aided" in the fifth paragraph instead of the language required by Notes on Use 5(a) for MAI-CR3d 304.04. Notes on Use 5(a) directs that, where the evidence shows that the conduct elements of the offense were committed entirely by someone other than the defendant, and the sole basis for the defendant's liability is his aiding the other person, the instruction should use the phrase "aided or encouraged" in the fifth paragraph instead of the phrase "acted together with or aided."[4] Williams contends that had trial counsel objected, the objection would have been sustained, and there is a reasonable probability that the outcome of the trial would have been different.

In Williams's amended motion, he alleged that trial counsel rendered ineffective assistance by failing to object to the submission of Instruction No. 6. At the evidentiary hearing, trial counsel testified that he was not aware that Instruction No. 6 did not conform to the approved instructions, and he had no strategic reason for not objecting to the erroneous instruction. The motion court found that trial counsel's performance was constitutionally deficient because he failed to object to a jury instruction that did not fully comply with the mandates of the approved instructions. Nevertheless, the motion court denied Williams's claim, concluding that Williams failed to establish that he suffered prejudice as a result of trial counsel's deficient performance. We review that ruling for clear error. Rule 29.15(k).

---

[4] According to MAI-CR3d 304.04 Notes on Use 5(c), the phrase "acted together with or aided" is appropriate where the evidence is unclear or conflicting as to whether the defendant or another person engaged in the conduct elements constituting the offense.

"[F]ailure to object to an improper instruction is error and satisfies the performance prong of the test for ineffective assistance of counsel . . . ." *Tilley v. State*, 202 S.W.3d 726, 734 (Mo. App. S.D. 2006). However, to satisfy the prejudice prong of the test, Williams must establish that there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 733-34.

Williams argues that the disjunctive phrasing of "acted together with or aided" violated his right to a unanimous verdict because some jurors may have found that he acted with Andre and other jurors may have found that he aided Andre after the fact. Williams further asserts that comments by the State during closing argument that Williams "worked with" or "acted with" Andre in committing the crime, coupled with the incorrect instruction, further misled the jury by suggesting that Williams either acted with Andre in committing the crime or that he committed some of the conduct elements of the underlying crime.

The motion court disagreed and referred to our review of this claim on direct appeal,[5] where we found that "the prosecutor's argument in this case was not unsubstantiated." *Williams*,

---

[5] Williams suggests that the motion court's analysis was flawed because it employed the same analysis as did this court in Williams's direct appeal when we reviewed Williams's jury instruction argument on direct appeal under a plain error standard of review.

The Missouri Supreme Court in *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002), clarified that denial of a plain error claim on direct appeal is not dispositive of the question whether counsel was ineffective in failing to preserve the issue as to which plain error was not found. However, the facts that formed the bases of the appellate court's finding of no plain error on direct appeal can serve to establish a finding of no *Strickland* prejudice on the post-conviction motion. *Id.* at 426. The court recognized that the "theoretical difference in the two standards of review will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal, for, in most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the *Strickland* test." *Id.* at 428. The question on appeal of the denial of post-conviction relief is whether the case "falls within this limited range of cases in which plain error did not exist, but *Strickland* prejudice is present because counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 429 (internal quotation omitted).

Although the motion court did refer to this court's findings on this issue on direct appeal, the motion court properly applied the *Strickland* standard, not the plain error standard, specifically stating that, "[k]eeping in mind the standard that must be met in order to establish prejudice under the *Strickland* test—'a reasonable probability that but for counsel's failure to act the result of the proceeding would have been different'—the Court cannot, viewing the evidence as whole, find that to be true in this case."

409 S.W.3d at 474. "That the prosecutor used the phrase 'acted with' instead of 'aided' did not serve to mislead or confuse the jury." *Id.* "It was clear that the prosecutor was not arguing the technical distinction between the two phrases, i.e., that Williams 'acted with' Andre by personally committing the conduct elements of the robbery and also 'aided' Andre by helping him commit the robbery."[6] *Id.* at 474-75. "Rather, the prosecutor used the phrases interchangeably to describe evidence that constituted . . . Williams's acts of 'aiding' Andre— providing local knowledge of the area and driving Andre to and from the robbery scene." *Id.* at 475 (footnote omitted).

Furthermore, in considering whether the prosecutor's comment during closing, that Williams "acted with" Andre, further misled the jury, we must view it "in the context in which it appears." *State v. Coulter*, 255 S.W.3d 552, 556 (Mo. App. W.D. 2008) (internal quotation omitted). The comments in question followed the prosecutor's argument, based on Instruction No. 6, that the State was required to prove that *Andre* committed each conduct element set out in the verdict director. The verdict director itself stated that in order to find Williams guilty, the jury had to find that *Andre* committed the conduct elements of robbery in the first degree. In context, then, we do not believe that the prosecutor's argument misled the jury.

---

[6] In addressing whether plain error prejudice resulted from an instruction erroneously using "acted together with or aided" instead of "aided or encouraged," the Eastern District of this court concluded that, when the terms are not defined:

> an ordinary juror would have no understanding of the legal principles underlying conduct elements or intent elements of a crime . . . [,] would see no distinction between the two terms[,] and would treat them as functionally equivalent. In ordinary language, when we think of 'aiding' someone, we likely think of "acting together with" him or her. Likewise, when we think of "acting together with" someone, we likely think of "aiding" that person.

*State v. Young*, 369 S.W.3d 52, 58 (Mo. App. E.D. 2012). The court had no reason to believe the jurors drew a technical legal distinction between the terms, and without such a distinction, the defendant did not demonstrate his claim of prejudice. *Id.*

Finally, Williams supports his argument that Instruction No. 6 misled and confused the jury by pointing to one of the questions the trial court received from the jury regarding Instruction No. 5, which instructed the jury that:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

The question asked by the jury was: "Instruction 5 'he aids or encourages the other person in committing it, crime' needs further clarification. What if [the] person does not know [a] crime has been committed, but [is] driving [the] getaway car." The motion court again referred to our court's analysis of this issue on direct appeal.[7] The motion court noted that this court found that contrary to Williams's contention that the jury was confused by the verdict-directing instruction's erroneous use of the phrase "acted together with," the note shows just the opposite—"that the jury understood that, before it could find Williams guilty, it had to decide whether he *aided* or *encouraged* Andre in committing the robbery." *Williams*, 409 S.W.3d at 475. "The jury's note simply indicates that it was unsure, at that point in its deliberations, whether Williams's driving the getaway car was sufficient evidence of aiding or encouraging." *Id.* The motion court observed that while Instruction No. 6 did contain the wrong phrase in the fifth paragraph, the immediately preceding Instruction No. 5 contained the correct "aids or encourages" phrase, and the jury's note indicates that the jury focused on the correct language contained in Instruction No. 5. Reading these two instructions together, we agree with the

---

[7] Because trial counsel did not object to Instruction No. 6 at trial, Williams argued on direct appeal that the trial court plainly erred in submitting Instruction No. 6 to the jury. *Williams*, 409 S.W.3d at 472. We agreed that the trial court erred in giving the instruction in violation of the Notes on Use under MAI-CR. *Id.* at 473. But we concluded that Williams failed to demonstrate that the erroneous verdict-directing instruction so misdirected or failed to instruct the jury that the error affected the jury's verdict. *Id.* at 475. Accordingly, we determined Williams did not establish that he suffered manifest injustice or a miscarriage of justice entitling him to plain-error relief. *Id.* at 475-76.

motion court that the jury was not misled or confused by the incorrect phrase in Instruction No. 6. Accordingly, the motion court did not clearly err in analyzing Williams's claim under *Strickland* to conclude that he suffered no prejudice from trial counsel's deficient performance in failing to object to Instruction No. 6.

Point II is denied.

## Conclusion

The motion court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Alok Ahuja, Chief Judge, and James Edward Welsh, Judge, concur.