

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **WILLIAM MILLER-KIRKLAND,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | **WD86306** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **September 17, 2024** |
| | ) | |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Marco A. Roldan, Judge**

**Before Division One:** Edward R. Ardini, Jr., Presiding Judge,
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Mr. William Miller-Kirkland ("Miller-Kirkland") appeals from the judgment

entered by the Circuit Court of Jackson County, Missouri ("motion court"), following an

evidentiary hearing denying Miller-Kirkland's Rule 29.15 motion. We affirm.

## Factual and Procedural History[1]

In the early morning hours of December 28, 2017, Miller-Kirkland went to his mother's ("Mother") house in Independence, Missouri, and shot Mother's boyfriend ("Victim").  Mother called 911 and reported the shooting.  When officers arrived, they observed Victim unresponsive on the floor with multiple gunshot wounds.  Mother told police that Miller-Kirkland came to her home "intoxicated and angry" and explained that he was upset because his home had been broken into and he believed that Victim and Victim's cousin were responsible.  Mother stated that Miller-Kirkland was "angry and yelling at [Victim]" and threatened to kill Victim multiple times.  Mother told police that, prior to the shooting, she had to restrain Miller-Kirkland "against the wall with her hand on his mouth and neck," pushing him away from Victim.  Mother stated that she did not know where Miller-Kirkland went after he left her residence, but informed police he was armed.

Police located, arrested, and took Miller-Kirkland into custody approximately four hours after the shooting.  Subsequently, detectives recovered a firearm that was linked to fourteen shell casings found in Mother's home and had been purchased by Miller-Kirkland in March 2017.

When the police and first responders arrived at Mother's home, they removed Victim, who was then still alive.  Mother gave the police consent to search her home and

---

[1] On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the verdict and judgment. *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018); *Balbirnie v. State*, 649 S.W.3d 345, 349 n.1 (Mo. App. W.D. 2022).

2

accompanied the police to the station to give an interview. There, Mother again informed police that Miller-Kirkland had shot Victim. During the interview, Victim died. Miller-Kirkland was charged with armed criminal action and first-degree murder.

On September 9, 2019, a jury trial commenced. Mother's recorded interview with police was played to the jury. In it, the detective ("Police Detective") asked Mother whether Miller-Kirkland used drugs. Miller-Kirkland's trial counsel ("trial counsel") immediately objected to the question and requested a curative instruction to be given to the jury instructing them to disregard Police Detective's question to Mother about Miller-Kirkland's drug use. The trial court sustained the objection and issued the requested curative instruction. No other reference to drug use was made throughout the entirety of the trial. Instead, the jury only heard evidence that Miller-Kirkland consumed alcohol on the night of the shooting.

The State relied on the physical evidence of the fourteen shell casings recovered by the police and six bullet holes located in the carpet under Victim to argue that shots were fired while Victim was on the floor. The prosecutor argued that the holes in the floor proved Miller-Kirkland acted with deliberate intent because at least some shots were fired while he stood over Victim.

Notably, no trajectory analysis was conducted during the State's investigation of the case that would have aided in showing Victim's position when he was shot. Trial counsel exploited what he perceived as an investigational oversight in his cross-examination of Police Detective at trial and in his closing argument to the jury.

3

Miller-Kirkland testified at the trial in his own defense.  He testified that when he entered Mother's home, he saw Victim pointing a gun at Mother's head and pushed Mother aside to shoot Victim.  Miller-Kirkland further testified that he was scared for his life because Victim still had a gun in his hand and that he knew Victim was previously imprisoned for shooting and killing a man.

In his closing argument, trial counsel argued that Miller-Kirkland acted in self-defense when he shot Victim and that he had a reasonable fear of Victim because Victim was armed and had a prior criminal conviction for shooting and killing another person.  Trial counsel also emphasized what he characterized as a poor investigation by law enforcement.  He argued there was no forensic evidence of Victim's position when he fell, and additionally noted that crime-scene investigators failed to interview the paramedics about whether shell casings had been moved or to determine whether the bullets ricocheted.  Trial counsel argued the evidence simply did not support a finding that Miller-Kirkland was standing over Victim when shots were fired.  Trial counsel concluded his argument by noting that the police had not done their job and the State had not met its burden of proving beyond a reasonable doubt that Miller-Kirkland acted with unlawful premeditated deliberation in shooting Victim.

During the instruction conference, the trial court noted that the State had submitted Instruction 13, modeled after MAI-CR 4th ("MAI") 410.50, which instructed the jury that "an intoxicated or drugged condition . . . will not relieve a person of responsibility for his conduct."  Trial counsel stated that he had no objection to the instruction.  The full instruction as submitted to the jury stated:

4

The state must prove every element of the offense beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated *or a drugged* condition whether from alcohol *or drugs* will not relieve a person of responsibility for his conduct.

(emphasis added).

With respect to Count I of the indictment, the jury received instructions on first-degree murder, armed criminal action, and lesser included offenses[2] as well as instructions for finding Miller-Kirkland not guilty based on self-defense or defense of others. The jury found Miller-Kirkland guilty of first-degree murder and armed criminal action. The trial court sentenced Miller-Kirkland to life in prison without the possibility of parole for murder and ten years for armed criminal action with the sentences to run concurrently.

Miller-Kirkland directly appealed his convictions to this court arguing, among other things, that the trial court plainly erred by instructing the jury on intoxication by drugs because there was no evidence that he used drugs. We affirmed Miller-Kirkland's convictions in a *per curium* order ("PCO"). *State v. Miller-Kirkland*, 638 S.W.3d 122 (Mo. App. W.D. 2022) (Mem.). In the legal memorandum supplementing the PCO, we agreed with Miller-Kirkland that because there was no evidence of drug use, the disjunctive contained in Instruction 13, referring to "drug" or "drugged," constituted instructional error. However, we ultimately concluded the jury's verdict was not affected

---

[2] These jury instructions explained that it was the State's burden to prove Miller-Kirkland's guilt "beyond a reasonable doubt."

by the instructional error and that Miller-Kirkland suffered no manifest injustice under our plain error standard of review.

Miller-Kirkland timely filed a post-conviction Rule 29.15 motion with the assistance of appointed counsel.[3] The Rule 29.15 motion alleged, *inter alia*, that Miller-Kirkland's trial counsel was ineffective for (1) failing to investigate and call an expert witness to testify to whether Victim was standing or lying on the ground when he was shot for the purpose of aiding the jury on the question of premeditation; and (2) failing to object to Instruction 13.

An evidentiary hearing was conducted by the motion court. Appointed counsel called a forensic consultant ("Consultant") who testified that he previously served as an expert witness in 200-300 cases involving bullet trajectories. Consultant testified that he was tasked with reviewing the crime-scene investigator's report, which noted the police located six bullet holes in the floorboard of the house. Consultant stated that in reviewing police photographs of the bullet holes, the holes appeared to be "slanted" and "very small" with fragmented bullets. Consultant verified there was "no trajectory analysis" performed by the police. Consultant offered his opinion that he did "not think [Victim] was shot on the floor for the vast majority of the shots" based on the materials provided for his review. However, he admitted on cross-examination that it was *not possible to determine Victim's exact position at the time of the shooting*.

---

[3] All rule references are to MISSOURI SUPREME COURT RULES (2022), unless otherwise indicated.

Trial counsel and Miller-Kirkland also testified at the evidentiary hearing. Trial counsel testified that his decision not to employ an expert witness was strategic because the police had not conducted a trajectory analysis and part of his defense strategy was to exploit and highlight the lack of thorough investigation by the police. Trial counsel stated the police's poor investigation allowed him to argue it was not possible to tell whether Victim was lying on the ground at the time of the shooting.

Trial counsel further testified that he did not object to the voluntary intoxication instruction because the instruction contained the disjunctive "alcohol *or* drugs." Trial counsel believed the instruction was telling the jury to consider one or the other (*i.e.* alcohol, drugs) but not "both." Because there was evidence that Miller-Kirkland used alcohol and no evidence that Miller-Kirkland used drugs, trial counsel believed the jury would only consider the "alcohol" portion of the disjunctive in rendering its verdict.

For his part, Miller-Kirkland testified that trial counsel initially told him that an expert witness was needed to discuss the trajectory of the bullet holes but later told him no expert witness was necessary because the State was not going to produce any forensic evidence at trial to determine the angle of bullet trajectories.

The motion court denied Miller-Kirkland's claim that trial counsel was ineffective for failing to call an expert witness, stating:

> There is no evidence this testimony would have provided [Miller-Kirkland] with a viable defense. [Trial counsel] testified that it was his trial strategy to not hire an expert witness as the State did not present any trajectory evidence, and that it was his strategy to attack the lack of evidence. He also testified that, if he had thought it would have been helpful to the case, he would have hired an expert, but he did not believe it was necessary. Additionally, [Consultant] testified at the hearing that,

7

based on the evidence he reviewed, it could not be determined where the victim was at the time he was shot. This testimony would not have provided [Miller-Kirkland] with a viable defense. Credible evidence established that the decision not to hire and call a forensic expert was clearly trial strategy on the part of trial counsel.

The motion court also denied Miller-Kirkland's claim that trial counsel was ineffective for failing to object to the involuntary intoxication instruction:

> The issue of Instruction No. 13 improperly referencing drugs was addressed on direct appeal in WD83372. While the Missouri Court of Appeals Western District noted in their Opinion that the use of the term "drugs" in Instruction 13 was improper, as no evidence of drug use by [Miller-Kirkland] was introduced at trial, they ultimately found that [Miller-Kirkland] failed to show how this instructional error affected the jury's verdict and caused a manifest injustice or miscarriage.
>
> At the hearing trial counsel testified that he did not object to Instruction No. 13 where the term "drugged" was included because he did not believe the jury would consider it as there was no evidence of drug use. Since there was no evidence of drug use, including the term "drugged" in Instruction No. 13 was improper. However, even if [trial] counsel should have objected to the improper form of Instruction No. 13, [Miller-Kirkland] has failed to show how this affected the jury's verdict and the outcome of his case. Whether the jury thought [Miller-Kirkland] was under the influence of drugs or alcohol is irrelevant, as the instruction tells them that voluntary intoxication does not relieve an accused of responsibility. The jury is presumed to follow the instructions. *State v. Wheeler*, 219 S.W.3d 811, 817 (Mo. App. S.D. 2007). [Miller-Kirkland] has failed to show prejudice, and subpart one of Claim 8(j) is denied.

Miller-Kirkland timely appealed, asserting two points on appeal. In his first point, he contends the motion court clearly erred by denying his post-conviction claims because expert testimony would have shown that he did not possess the requisite *mens rea* to commit the charged offense of murder in the first degree. In his second point, Miller-Kirkland contends the motion court clearly erred by denying his post-conviction relief claims because Miller-Kirkland was

8

prejudiced by trial counsel's failure to object to the involuntary intoxication instruction, which included disjunctives referring to "a drugged condition" and "drugs."

**Standard of Review**

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, the movant must demonstrate: "(1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* (citing *Strickland*, 466 U.S. at 687). If movant fails to prove either prong, relief cannot be granted. *Hecker v. State*, 677 S.W.3d 507, 512 (Mo. banc 2023). "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). "In reviewing the performance prong, [Miller-Kirkland] must overcome the presumption[] that any challenged action was sound trial strategy . . ." *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

"Appellate review of a motion court's dismissal of a post-conviction relief motion is limited to determining whether the findings and conclusions of law are clearly erroneous." *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017) (citing *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014)); *see also* Rule 29.15(k). "A motion court's findings and conclusions are clearly erroneous if this Court 'is left with the definite and

9

firm impression that a mistake has been made' after a review of the entire record." *Id.* (quoting *Price*, 422 S.W.3d at 294). "The motion court's findings of fact and conclusions of law are presumed to be correct." *Beck v. State*, 637 S.W.3d 545, 551 (Mo. App. W.D. 2021) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)). The motion court's judgment "will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the [motion] court are wrong or not sufficient." *Driskill v. State*, 626 S.W.3d 212, 224 n.6 (Mo. banc 2021) (internal quotations omitted).

## I.

Miller-Kirkland argues in Point I that trial counsel was ineffective for failing to investigate and hire a forensic expert. Miller-Kirkland contends that expert testimony would have shown Victim was standing at the time of the shooting, thereby casting doubt on the "deliberation" element of the State's case. We disagree.

To prevail on a claim of ineffective assistance of counsel for failing to call an expert witness, Miller-Kirkland must show that "the witness's testimony would have produced a viable defense." *Edwards v. State*, 200 S.W.3d 500, 518 (Mo. banc 2006) (internal quotation marks omitted); *White v. State,* 576 S.W.3d 285, 297 (Mo. App. W.D. 2019). Similarly, to prevail in a claim that counsel was ineffective for failing to investigate, Miller-Kirkland must prove that "the information [his counsel failed to discover] would have aided or improved his position at trial." *State v. Stewart*, 850 S.W.2d 916, 921 (Mo. App. W.D. 1993).

Miller-Kirkland cannot meet this burden. Consultant could *not* provide any definite conclusions about Victim's position at the time of the shooting. Consultant's

opinion that he did "not think [Victim] was shot on the floor for the *vast majority* of shots" was, at best, equivocal, and, more importantly, did not contradict the State's theory of the physical evidence: that Victim fell and Miller-Kirkland "continued to walk over" and fire *some* shots into Victim's still living body. Thus, even if we credit Consultant's equivocal opinion, it does not provide Miller-Kirkland with a viable defense, nor would it have improved his position at trial.

Further, Miller-Kirkland cannot overcome the presumption that trial counsel employed sound trial strategy. "Counsel may choose to call or not call almost any type of witness or to introduce or not introduce any kind of evidence for strategic considerations." *Shockley v. State*, 579 S.W.3d 881, 908 (Mo. banc 2019) (quoting *Vaca v. State*, 314 S.W.3d 331, 337 (Mo. banc 2010)). Trial counsel testified that he knew the State did not have an expert witness who could testify to the trajectory of the bullets and that he elected not to engage an expert because he wanted to highlight and exploit the lack of ballistic evidence collected by the police. Miller-Kirkland admitted trial counsel shared this strategy with him prior to trial. This strategy was implemented throughout trial counsel's argument on behalf of Miller-Kirkland's case at trial, including in his cross-examination of Police Detective and in his closing argument.

By forcing the State to explain its failure to conduct *any* trajectory analysis or gather additional evidence about the bullets (i.e., whether bullet's ricocheted, testimony from paramedics), trial counsel presented a compelling argument from which the jury could conclude there was "doubt" on an element of "deliberation." Had trial counsel elected to hire Consultant, who could not rule out the possibility that Victim was shot on

11

the floor, such testimony may have refocused "doubt" on Miller-Kirkland's self-defense argument and away from the State's burden of proof.[4]

On this record, the motion court's conclusions that trial counsel was not ineffective because Consultant's testimony would not provide Miller-Kirkland with a viable defense and was a decision of reasonable trial strategy were not clearly erroneous.

Point I is denied.

**II.**

Miller-Kirkland argues in Point II that his trial counsel was ineffective for failing to object to Instruction 13. As noted above, claims of ineffective assistance of counsel are evaluated under the two-pronged test articulated in *Strickland*. To succeed, Miller-Kirkland must show (1) that his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, *and* (2)

---

[4] Miller-Kirkland argues he is entitled to a reversal based on *Beckett v. State*, 675 S.W.3d 533 (Mo. App. W.D. 2023), but *Beckett* is distinguishable. In *Beckett*, the defendant ("Beckett") claimed he went to clear a handgun, but that in the process of doing so, the handgun discharged and released two bullets, killing his wife. 675 S.W.3d at 536-37. At trial, the State called a firearms expert to testify that the killing was not accidental. *Id*. at 537. Beckett's trial counsel knew the State was going to present expert testimony but failed to secure his own expert. *Id*. at 541. Beckett filed for post-conviction relief, claiming his counsel was ineffective for failing to hire an expert witness, and presented an expert at the post-conviction hearing who testified that Beckett's account of accidental firing was plausible due to particular safety and trigger mechanisms on the handgun in question. *Id*. at 538. The motion court denied Beckett's claim and we reversed on appeal, noting that Beckett's trial counsel could have conducted a more thorough cross-examination of the State's expert if he possessed necessary information about the handgun's operation. *Id*. at 547. Here, Miller-Kirkland's trial counsel knew the State did *not* have an expert witness to be cross-examined and elected not to engage an expert to testify on the topic precisely so he could highlight the fact that Victim's position at the time of the shooting was not ascertainable.

that he was prejudiced by that failure. *Strickland*, 466 U.S. at 687. We address these prongs in order.

## A. Performance Prong

"[F]ailure to object to an improper instruction is error and satisfies the performance prong of the test for ineffective assistance of counsel[.]" *Williams v. State*, 490 S.W.3d 398, 406 (Mo.App. W.D. 2016) (internal quotation marks omitted) (first alteration in original). Here, Instruction 13 was improper, and trial counsel's failure to object was unreasonable and constitutionally deficient performance.

When there is a disjunctive in an instruction, both parts of the disjunctive must be supported by substantial evidence. *State v. Avery*, 275 S.W.3d 231, 233 (Mo. banc 2009) ("A jury instruction must be supported by substantial evidence and the reasonable inferences to be drawn therefrom."); *Wright v. Barr*, 62 S.W.3d 509, 526 (Mo. App. W.D. 2001) ("If an instruction provides for disjunctive alternatives, each alternative submitted must be supported by substantial evidence.").

Section 562.076(3) provides that "[e]vidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense." Consistent with the disjunctive in section 562.076(3), MAI 410.50 requires the election of "intoxicated" and "alcohol" or "drugged" and "drugs," or both if both conditions are applicable, as indicated by the use of parentheses:

13

> The state must prove every element of the offense beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that (an intoxicated) (or) (a drugged) condition (whether) from (alcohol) (or) (drugs) (or) ([Identify other substance.]) will not relieve a person of responsibility for his conduct (unless such condition was involuntarily produced.).

MAI 410.50. The trial court approved submission of Instruction 13, which instructed the jury on *both* disjunctives, "you are instructed that an intoxicated *or drugged condition . . .* will not relieve a person of responsibility for his conduct." Therefore, *both disjunctives were required to be supported by substantial evidence*. *Wright*, 62 S.W.3d at 526.

Submission of the "alcohol" disjunctive was proper because there was evidence before the jury that Miller-Kirkland consumed alcohol on the night of the incident. However, submission of the "drug" disjunctive was improper because there was no evidence of drug use by Miller-Kirkland. The prosecutor did not ask any questions about drug use as it related to Miller-Kirkland or make any reference to drug use by Miller-Kirkland in opening or closing arguments. The *only* reference to Miller-Kirkland and drugs was the recorded interview question asked by Police Detective to Mother. The jury did not hear Mother's answer because trial counsel immediately objected and the trial court issued a curative instruction telling the jury "to disregard the most recent questions by the detective regarding [Miller-Kirkland]." Thus, not only did the jury *not* hear evidence of drug use, it was explicitly instructed to *disregard* the sole reference in the trial to drug use.

In its conclusions of law, the motion court acknowledged our determination on Miller-Kirkland's direct appeal that Instruction 13 was improper. Nevertheless, it ruled

14

that trial counsel's performance was not deficient and credited trial counsel's testimony at the evidentiary hearing that he did not object to Instruction 13 because he did not believe the jury would consider the "drug" disjunctive.

Contrary to what the motion court's ruling suggests, trial counsel's belief that the jury would not consider an unsupported disjunctive does not excuse his failure to object to an erroneous instruction. *Williams,* 490 S.W.3d at 406. Trial counsel's failure to object to the erroneous jury instruction satisfies the performance prong of the *Strickland* test.

However, to prevail on an ineffective assistance of counsel claim, Miller-Kirkland must establish *both* the performance prong *and* the prejudice prong. He cannot.

**B. Prejudice Prong**

As an initial matter, we note that the motion court applied the wrong standard of review in assessing *Strickland* prejudice. The motion court's ruling conflated the plain error standard for prejudice (manifest injustice) applied by this court on direct appeal with the *Strickland* standard for prejudice. Simply put, these standards are "not equivalents." *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002).

"[U]nder Missouri law, plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome determinative." *Id.* The plain error standard on direct appeal presupposes "that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged." *Id*. at 428.

15

By contrast, a Rule 29.15 motion asserts "the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower." *Id.* (internal quotation marks omitted) (quoting *Strickland,* 466 U.S. at 694). The prejudice prong of *Strickland* is satisfied where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 429 (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 694).

Here, the motion court improperly applied the plain error standard by referencing this court's "manifest injustice" (or lack thereof) finding on direct appeal and relying on "outcome determinative" language to support its conclusion that Miller-Kirkland did not suffer *Strickland* prejudice. The motion court's prejudice-prong analysis, thus, was improper.

Nonetheless, we will affirm the motion court's judgment "if cognizable under any theory, regardless of whether the reasons advanced by the [motion] court are wrong or not sufficient." *Driskill v. State*, 626 S.W.3d 212, 224 n.6 (Mo. banc 2021) (internal quotations omitted); *see also Kelley v. State*, 618 S.W.3d 722, 735 (Mo. App. W.D. 2021) ("[W]e may affirm the [judgment] on any legal ground supported by the record if the motion court arrived at the correct result.") (internal quotation marks and citation omitted). The motion court ruled that Miller-Kirkland did not meet his burden of proving the *Strickland* prejudice prong, and we will uphold that conclusion unless Miller-

16

Kirkland can demonstrate he was prejudiced under *Strickland*'s slightly less exacting standard.

Notably, the "theoretical difference" between the standards in question will only produce a different outcome in a "small number of cases." *Deck*, 68 S.W.3d at 428. In most cases, "an error that is not outcome-determinative on direct appeal will also fail to meet the *Strickland* test." *Id*. Miller-Kirkland relies on *Deck* to argue that his case sits among the "small number" of outliers where a different result is merited under *Strickland*. We disagree.

In *Deck*, the defendant's trial counsel submitted an instruction on mitigation during the penalty phase of a capital case that improperly omitted the last two paragraphs of the patterned jury instructions. *Id.* at 423. The defendant was convicted and sentenced to death. *Id*. at 424. He appealed upon discovery of trial counsel's oversight. *Id*. The claim was denied by the Missouri Supreme Court on direct appeal under plain error review, and the defendant raised an ineffective assistance of counsel claim. *Id*. On review of the denial of the ineffective assistance claim, the Missouri Supreme Court found *Strickland* prejudice. The court reasoned that mitigating circumstances were entered into evidence and the missing paragraphs of the instruction would have directed the jury on the need to "balance this mitigating evidence with the aggravating circumstances focused on by the State" when considering the death penalty. *Id*. at 430. The court further explained that trial counsel had failed to provide the jurors with an explanation of "mitigation" during *voir dire*, so they were "more dependent" on the missing instructions. *Id*.

17

Here, there is no reasonable probability that "but for" counsel's failure to object, the result of the proceedings would have been different. As we have discussed at length herein, there was no evidence of drug use by Miller-Kirkland in the trial, and the jurors were expressly given a curative instruction by the trial court to effectively *disregard any reference to drug use by Miller-Kirkland*. We presume the jury followed the curative instruction. *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022).

Thus, unlike in *Deck*, where the jury was provided no guidance on how to handle the improper instruction, the jury in this case was effectively told by the trial court to only consider "alcohol" in its deliberations, not "drugs." And, as trial counsel explained in his testimony at the PCR hearing, because there was a complete lack of any evidence of drugs at trial (upon trial counsel's sustained objection to the question about drug use that resulted in the curative instruction), trial counsel explained that he chose not to object—as he simply did not view Instruction 13 as an impediment to Miller-Kirkland's defense.

Under these circumstances, Miller-Kirkland has failed to show *Strickland* prejudice sufficient to "undermine confidence" in the jury's verdict.

Point II is denied.

## Conclusion

The motion court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and Cynthia L. Martin, Judge, concur.